Case 1:21-cr-00148-PAB *SEALED* Document 1 Filed 04/22/21 USDC Colorado Page 1 of 12
4:21-mj-06409-JEH # 1 Page 1 of 14
E-FILED
Wednesday, 28 April, 2021 10:59:51 AM
Clerk, U.S. District Court, ILCD

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Criminal Action No.:   21-CR-0148-PAB

UNITED STATES OF AMERICA,

    Plaintiff,

v.

1. REVA J. STACHNIW and

2. RON THROGMARTIN,

    Defendants.

---

## INDICTMENT

---

The Grand Jury Charges that:

### Background

At all times relevant to this Indictment:

#### The Co-Conspirators and Entities

1. Defendant **REVA JOYCE STACHNIW** ("**STACHNIW**") was a citizen of the United States and resident of Galesburg, Illinois.

2. Defendant **RON THROGMARTIN** ("**THROGMARTIN**") was a citizen of the United States and resident of Buford, Georgia.

3. Mark David Ray ("Ray") was a citizen of the United States and resident of Denver, Colorado.

1

4. Custom Consulting & Product Services LLC, MR Cattle Production Services LLC, and DBC Limited LLC were businesses located in Colorado, principally owned and controlled by Ray.

5. RM Farm & Livestock LLC ("RM Farm") and Sunshine Enterprises LLC ("Sunshine") were businesses located in Illinois, principally owned and controlled by **STACHNIW**.

6. Universal Herbs LLC was a licensed marijuana business located in Colorado, owned and controlled by **STACHNIW**, **THROMARTIN**, and Ray.

7. Bank 1 was a federally insured financial institution based in Illinois.

8. Bank 2 was a federally insured financial institution based in New York.

9. **STACHNIW's** businesses, RM Farm and Sunshine, maintained accounts at Bank 1. **STACHNIW** had access to and was an authorized signatory on these accounts. **THROGMARTIN** also had access to the accounts.

10. Victim 1 was a victim-investor who lived in Illinois.

11. Victim 2 was a victim-investor who lived in Colorado.

12. Victim 3 was a victim-investor who lived in Nebraska.

<u>The Conspiracy and the Scheme to Defraud</u>

13. Beginning in or around late 2017 and continuing through in or around early 2019, in the District of Colorado and elsewhere, defendants **STACHNIW** and **THROGMARTIN**, together with Ray and others known and unknown to the Grand Jury, perpetrated an investment fraud scheme in which they misrepresented and concealed material facts about how investors' money would be used.

Purpose of the Conspiracy and Scheme to Defraud

14. The purpose of the conspiracy and scheme to defraud was for the co-conspirators to unlawfully enrich themselves by (a) fraudulently selling and marketing investments in, among other things, cattle and marijuana; (b) concealing from victim-investors the true manner in which they were using the investors' money; (c) keeping a Ponzi-style investment scheme afloat by using new investor money to repay old investors; and (d) concealing the conspiracy.

Manner and Means of the Conspiracy and the Scheme to Defraud

It was part of the conspiracy and the scheme to defraud that:

15. The co-conspirators solicited hundreds of millions of dollars from victim-investors throughout the United States, including at least one victim-investor who lived in the District of Colorado. There were different means by which Ray, **STACHNIW**, and **THROGMARTIN** solicited money. Most often, the co-conspirators would fraudulently represent to victim-investors that their investments were backed by short-term investments in cattle. They also used false and fraudulent pretenses to solicit money from victim-investors for the co-conspirators' marijuana business, Universal Herbs LLC, which was based in the District of Colorado. Other victim-investors gave the co-conspirators money based on the co-conspirators' false promises that investment money would be used for legitimate business activity related to cattle or marijuana, without having the investment money linked to specific investment opportunities.

16. In all three variations of the co-conspirators' investment scheme, victim-investors were promised returns of approximately 10-20% over periods as short as several weeks. At no point did Ray, **STACHNIW**, **THROGMARTIN**, or their co-

conspirators tell victim-investors that the co-conspirators were primarily using their money to repay other investors in a Ponzi-style investment scheme, or to enrich themselves.

17. The co-conspirators would generally direct victim-investors to wire investment money to bank accounts controlled by the co-conspirators, primarily the RM Farm checking account at Bank 1. The co-conspirators also directed victim-investors to make payments directly to individuals who the victim investors were falsely led to believe were the co-conspirators' business associates, but were in fact other victim-investors.

18. **STACHNIW** was personally responsible for tracking the tens of millions of dollars in investments from, and payments to, victim-investors that flowed through the RM Farm account. As the sole signatory on the account, **STACHNIW** personally made payments to the victim-investors by mailing investors packages of blank checks bearing **STACHNIW**'s signature. The co-conspirators instructed the victim-investors how to fill out the checks and when to deposit them.

19. To perpetuate the Ponzi-style scheme, **STACHNIW** advised Ray and **THROGMARTIN**, generally via text message, telephone call, or email, on a near-daily basis, how much money the co-conspirators needed to raise from victim-investors to avoid overdrawing the various bank accounts the co-conspirators used, and exposing the scheme. At times, **STACHNIW** expressed surprise that Ray was able to find victim-investors willing to continue to invest, for example, writing to Ray on or about August 7, 2018, "I can't believe you are able to find people with money."

20. The co-conspirators routinely timed victim-investor deposits and payments to take advantage of Bank 1's and other financial institutions' clearing times (i.e., the delay between when a check was deposited and when the funds were credited to the depositing

account, or debited from the account on the check) in order to further the scheme. This practice was also known as check-kiting, and had the effect of defrauding the banks that the co-conspirators used in furtherance of their conspiracy and scheme to defraud, including Bank 1.

21. In or around 2018, Bank 1 expressed concerns about the funds flowing through **STACHNIW**'s accounts at Bank 1, particularly the RM Farm account, and indicated a desire to close the accounts. To induce Bank 1 to keep the accounts open, **THROGMARTIN** falsely represented that the suspicious transactions were in fact proceeds of cattle trades involving the co-conspirators' "well established cattle partners," who were, in reality, victims of the co-conspirators' fraud scheme.

22. The co-conspirators supplied their victim-investors with promissory notes purporting to pay returns of approximately ten to twenty percent. **THROGMARTIN** personally prepared and emailed many of these promissory notes to victim-investors, including Victim 2 in the District of Colorado. **THROGMARTIN** also prepared and sent false and fraudulent invoices purporting to document cattle transactions that never occurred to victim-investors, including Victim 2 in the District of Colorado.

23. From late 2017 and continuing through in or around early 2019, **STACHNIW**, **THROGMARTIN**, Ray, and their co-conspirators raised approximately $650 million from victim-investors.

24. Despite putting little to none of their own money into the scheme, the co-conspirators transferred substantial amounts of the proceeds of their conspiracy and scheme to themselves for their personal benefit. For example, between in or around 2017 and in or around 2018 alone, **STACHNIW** transferred approximately $9,000,000

5

traceable to victim-investors to her personal investment accounts, including approximately $1,000,000 in or around August 2018. **THROGMARTIN** received more than approximately $3,000,000 over the course of the conspiracy, including at least approximately $800,000 from **STACHNIW** in or around August 2018.

25. As a result of the conspiracy and scheme, **THROGMARTIN**, **STACHNIW**, and Ray caused victim-investors to lose tens of millions of dollars.

26. For the purposes of executing the scheme, the co-conspirators used, and caused to be used, a number of interstate wires, signals, and writings, including money transfers, emails, text messages, and phone calls, including, but not limited to, the following:

27. On or about March 2, 2018, **STACHNIW** deposited a check for $35,000 into the RM Farm checking account at Bank 1, causing an electronic wire transfer of funds from a bank account in Colorado to the RM Farm checking account at Bank 1.

28. On or about April 4, 2018, **STACHNIW** sent a text message to Ray, writing, "I will run to deposit [Victim 1's] Check."

29. On or about April 4, 2018, **STACHNIW** deposited a check made out to RM Farm for approximately $89,662 into the RM Farm account ending in 9430 at Bank 1.

30. On or about April 12, 2018, **THORGMARTIN** sent a text message to Ray, writing, "[Victim 2] has not called me back, and when I just called her, she didn't answer? I'm going to write up the note, sign & email to her, maybe that will help?"

31. On or about April 12, 2018, **THROGMARTIN** sent an email to Victim 3, copying Ray, stating, "[Victim 2], Please see attached $220 note. Please call me if you have any questions."

6

32. On or about May 25, 2018, Ray sent a text message to **THROGMARTIN**, writing, "Can u get [Victim 3] invoices [he/she] emailed u yesterday."

33. On or about May 25, 2018, **THROGMARTIN** responded to Ray's text message, writing, "Yes, do I just make it up on cattle?"

34. On or about May 25, 2018, **THROGMARTIN** sent an email to [Victim 3], copying Ray, stating, "Sorry for the delay, please see attached," and attaching approximately 17 invoices.

35. On or about September 13, 2018, **THROGMARTIN** sent a text message to Ray, writing, "They ([Bank 2]) doesn't know its [Bank 1], until deposited."

## COUNT ONE
### Conspiracy to Commit Wire Fraud
### 18 U.S.C. § 1349

36. The allegations set forth in Paragraphs 1 through 35 of this Indictment are realleged and incorporated by reference as though fully stated herein.

37. Beginning in or around 2017 and continuing through in or around 2019, in the District of Colorado and elsewhere, defendants **REVA JOYCE STACHNIW** and **RON THROGMARTIN** did knowingly and intentionally, that is, with the intent to further the objects of the conspiracy, combine, conspire, confederate, and agree with each other and Ray, and others known and unknown to the Grand Jury, to commit certain offenses against the United States, namely:

a. wire fraud, that is, knowingly, willfully, and with the intent to defraud, having devised and intending to devise a scheme and artifice to defraud, and to obtain money and property by means of materially false and fraudulent pretenses, representations, and promises, to transmit and to cause to be transmitted, by means of wire communications

7

in interstate and foreign commerce, writings, signs, signals, pictures, and sounds, for the purpose of executing such scheme and artifice, in violation of Title 18, United States Code, Section 1343; and

b. bank fraud, that is, knowingly and willfully, and with the intent to defraud, to execute a scheme and artifice to defraud a financial institution, to wit: Bank 1, the deposits of which were insured by the Federal Deposit Insurance Corporation, and to obtain money, funds, credits, and assets owned by and under the custody and control of the aforementioned financial institution by means of materially false and fraudulent pretenses, representations, and promises, in violation of Title 18, United States Code, Section 1344.

## Purpose of the Conspiracy

38. The allegations set forth in Paragraph 14 of this Indictment are realleged and incorporated by reference as a description of the purpose of the conspiracy.

## Manner and Means of the Conspiracy

39. The allegations set forth in Paragraphs 15 through 34 of this Indictment are realleged and incorporated by reference as a description of the manner and means of the conspiracy.

All in violation of Title 18, United States Code, Section 1349.

**COUNTS TWO TO SIX**
**Wire Fraud**
**18 U.S.C. §§ 1343 and 2**

Scheme and Artifice to Defraud

40. The allegations set forth in Paragraphs 1 through 35 of this Indictment are realleged and incorporated by reference.

41. Beginning in or around 2017 and continuing through in or around 2019, in the District of Colorado and elsewhere, defendants **REVA JOYCE STACHNIW** and **RON THROGMARTIN**, having knowingly devised and intended to devise a scheme and artifice to defraud, and to obtain money and property by means of materially false and fraudulent pretenses, representations, and promises, did knowingly transmit and cause to be transmitted, by means of wire communications in interstate commerce, writings, signs, signals, pictures, and sounds for the purpose of executing such scheme and artifice.

Use of Wires

42. On or about the below dates, in the District of Colorado and elsewhere, defendants **REVA JOYCE STACHNIW** and **RON THROGMARTIN**, aided and abetted by each other and others, for the purpose of executing the scheme and artifice described above, and in furtherance thereof, transmitted and caused to be transmitted by means of wire communication in interstate and foreign commerce the writings, signs, signals, pictures, and sounds, as described below for each count, with each transmission constituting a separate count:

| COUNT | APPROXIMATE DATE | DESCRIPTION OF WIRE |
|---|---|---|
| 2 | March 2, 2018 | Electronic wire transfer of $35,000 from the Custom Consulting & Product Services LLC checking account in the District of Colorado to a checking account at Bank 1 in Illinois. |

9

| COUNT | APPROXIMATE DATE | DESCRIPTION OF WIRE |
|---|---|---|
| 3 | April 4, 2018 | Text message sent via interstate wire communication from **STACHNIW** to Ray in the District of Colorado, stating, "I will run to deposit [Victim 1's] Check." |
| 4 | April 12, 2018 | Email message sent via interstate wire communication from **THROGMARTIN** to Victim 2 in the District of Colorado, stating, "[Victim 2], Please see attached $220k note. Please call me if you have any questions." |
| 5 | May 25, 2018 | Text message sent via interstate wire communication from **THROGMARTIN** to Ray in the District of Colorado, stating, "Yes, do I just make it up on cattle?" |
| 6 | September 13, 2018 | Text message sent via interstate wire communication from **THROGMARTIN** to Ray in the District of Colorado, stating, "They ([Bank 2]) doesn't know its [Bank 1], until deposited." |

All in violation of Title 18, United States Code, Sections 1343 and 2.

## COUNT SEVEN
### Conspiracy to Engage in Monetary Transactions in Proceeds of Specified Unlawful Activity
### 18 U.S.C. § 1956(h)

43. The allegations set forth in Paragraphs 1 through 35 of this Indictment are realleged and incorporated by reference.

44. Beginning in or around 2018 and continuing through in or around 2019, in the District of Colorado and elsewhere, defendants **REVA JOYCE STACHNIW** and **RON THROGMARTIN**, did knowingly and intentionally, that is, with the intent to further the object of the conspiracy, combine, conspire, confederate, and agree with each other and Ray, and others known and unknown to the Grand Jury, to knowingly engage and attempt to engage in monetary transactions by, through, and to a financial institution, affecting interstate and foreign commerce, in criminally derived property of a value greater than $10,000, such property having been derived from a specified unlawful activity, that is, Wire Fraud, in violation of Title 18, United States Code, Section 1957.

10

All in violation of Title 18, United States Codes, Section 1956(h).

## NOTICE OF FORFEITURE

45. The allegations set forth in Paragraphs 1 through 35 of this Indictment are realleged and incorporated by reference.

46. Upon conviction of the offenses in Counts One through Six of this Indictment, the defendants **REVA JOYCE STACHNIW** and **RON THROGMARTIN** shall forfeit to the United States any property, real or personal, which constitutes or is derived from any proceeds he obtained, directly or indirectly, as the result of such violation, and any property traceable to such property pursuant to Title 18, United States Code, Section 981(a)(1)(C), and Title 28, United States Code, Section 2461(c).

47. Upon conviction of the offense in Count Seven of this Indictment, the defendants **REVA JOYCE STACHNIW** and **RON THROGMARTIN** shall forfeit to the United States, pursuant to Title 18, United States Code, Sections 982(a)(1), any property, real or personal, involved in such offense, or any property traceable to such property.

48. If, as a result of any act or omission of a defendant, any property subject to forfeiture,

    a. cannot be located upon the exercise of due diligence;

    b. has been transferred or sold to, or deposited with, a third party;

    c. has been placed beyond the jurisdiction of the Court;

    d. has been substantially diminished in value; or

    e. has been commingled with other property which cannot be divided without difficulty;

the United States intends, pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 18, United States Code, Section 982(b)(1), to seek forfeiture of any other property of the Defendants up to the value of the forfeitable property.

All pursuant to Title 18, United States Code, Section 981(a)(1)(C), as incorporated by Title 28, United States Code, Section 2461(c), and Title 18 United States Code, Section 982(a)(1).

A TRUE BILL

<u>Ink signature on file in Clerk's Office</u>
FOREPERSON

DANIEL S. KAHN
Acting Chief, Fraud Section
Criminal Division
United States Department of Justice

By:   <u>s/Michael P. McCarthy</u>
      Michael P. McCarthy
      Trial Attorney
      Criminal Division, Fraud Section
      U.S. Department of Justice
      1400 New York Ave, N.W.
      Washington, D.C. 20530
      Tel: (202) 412-1514
      Email: michael.mccarthy2@usdoj.gov

| | |
|---|---|
| DEFENDANT : | REVA STACHNIW |
| AGE or YOB: | **1952** |

COMPLAINT FILED?  _____ Yes   \_\_\_X\_\_ No

If Yes, MAGISTRATE CASE NUMBER _____

HAS DEFENDANT BEEN ARRESTED ON COMPLAINT?  \_\_\_\_ Yes   \_\_X\_\_ No

OFFENSE(S):   Count 1: 18 U.S.C. § 1349 Conspiracy to commit wire fraud

Counts 2-6: 18 U.S.C. §§ 1343 and 2 Wire fraud and aiding and abetting

Count 7: 18 U.S.C. § 1956(h) Conspiracy to engage in monetary transactions in proceeds of specified unlawful activity

LOCATION OF
OFFENSE (**COUNTY**): Denver County

PENALTY:   Count 1: NMT 30 years' imprisonment; NMT $1,000,000 fine or both; NMT 5 years' supervised release.

Counts 2-6: NMT 20 years' imprisonment; $250,000 fine or both; NMT 3 years' supervised release.

Count 7: NMT 10 years' imprisonment; $250,000 fine or both; NMT 3 years' supervised release.

AGENT:   SA Alfredo Trejo

AUTHORIZED BY:   Michael McCarthy
US Trial Attorney

ESTIMATED TIME OF TRIAL:

\_X\_ five days or less; \_\_\_\_ over five days

THE GOVERNMENT

\_\_\_ will seek pretrial detention in this case based on 18 U.S.C. § 3142(f)

The statutory presumption of detention is not applicable to this defendant.

| | |
|---|---|
| DEFENDANT : | RON THROGMARTIN |
| AGE or YOB: | **1963** |
| COMPLAINT FILED? | _____ Yes  ___X__ No |
| | If Yes, MAGISTRATE CASE NUMBER _____ |
| HAS DEFENDANT BEEN ARRESTED ON COMPLAINT? | ____ Yes  __X__ No |
| OFFENSE(S): | Count 1: 18 U.S.C. § 1349 Conspiracy to commit wire fraud |
| | Counts 2-6: 18 U.S.C. §§ 1343 and 2 Wire fraud and aiding and abetting |
| | Count 7: 18 U.S.C. § 1956(h) Conspiracy to engage in monetary transactions in proceeds of specified unlawful activity |
| LOCATION OF OFFENSE (**COUNTY**): | Denver County |
| PENALTY: | Count 1: NMT 30 years' imprisonment; NMT $1,000,000 fine or both; NMT 5 years' supervised release. |
| | Counts 2-6: NMT 20 years' imprisonment; $250,000 fine or both; NMT 3 years' supervised release. |
| | Count 7: NMT 10 years' imprisonment; $250,000 fine or both; NMT 3 years' supervised release. |
| AGENT: | SA Alfredo Trejo |
| AUTHORIZED BY: | Michael McCarthy<br>US Trial Attorney |

ESTIMATED TIME OF TRIAL:

  X   five days or less; ____ over five days

THE GOVERNMENT

___ will seek pretrial detention in this case based on 18 U.S.C. § 3142(f)

The statutory presumption of detention is not applicable to this defendant.